## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | )    **Chapter 11** |
| | ) |
| **DAYTON SUPERIOR CORPORATION,** | )    **Case No. 09-11351 (BLS)** |
| a Delaware corporation,[1] | ) |
| | ) |
| Debtor. | )    Re: Docket No. 17 |
| | ) |

### INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364 AND 507 (1) APPROVING POSTPETITION FINANCING, (2) AUTHORIZING USE OF CASH COLLATERAL AND REPAYMENT OF PREPETITION REVOLVING LOAN DEBT, (3) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (4) GRANTING ADEQUATE PROTECTION, (5) MODIFYING AUTOMATIC STAY, AND (6) SCHEDULING A FINAL HEARING

This matter having come before the Court upon the motion (the "DIP Motion") by Dayton Superior Corporation, (the "Borrower" or the "Debtor") in the above-captioned Chapter 11 case (collectively with any Successor Case (as defined herein), the "Case"), pursuant to Sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1(b), 4001-2, 9006-1 and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware ("Local Rules"), seeking, *inter alia,* entry of this interim order ("Interim Order"):

    (i)     authorizing the Debtor to obtain secured postpetition financing on a superpriority basis (the "DIP Facility") pursuant to the terms and conditions of that certain Senior Secured Priming and Superpriority Debtor-in-Possession Revolving Credit Agreement (as amended, supplemented, restated, or otherwise modified from time to time, the "DIP Agreement") by and among the Borrower, as borrower, and General Electric Capital Corporation, as collateral and

---

[1] The last four digits of the Debtor's federal tax identification number are: EIN: XX-XXX6346. The Debtor's mailing address is 7777 Washington Village Dr., Suite 130, Dayton, Ohio 45459.

administrative agent (the "<u>DIP Administrative Agent</u>") for and on behalf of itself and the other lenders party thereto from time to time (collectively, including the DIP Administrative Agent, the "<u>DIP Lenders</u>"), substantially in the form of Exhibit A annexed to the DIP Motion;

(ii)    authorizing the Debtor to execute and deliver the DIP Agreement and the other related loan documents (collectively, together with this Order, the "<u>DIP Documents</u>"), by and among the Borrower and the DIP Administrative Agent, and to perform such other acts as may be necessary or desirable in connection with the DIP Documents;

(iii)    granting the DIP Facility and all obligations owing thereunder and under the DIP Documents to the DIP Administrative Agent and DIP Lenders (collectively, and including all "Obligations" as described in the DIP Agreement, the "<u>DIP Obligations</u>") allowed superpriority administrative expense claim status in the Case pursuant to Section 364(c)(1) of the Bankruptcy Code;

(iv)    granting to the DIP Administrative Agent, for the benefit of itself and the DIP Lenders automatically and properly perfected security interests in and liens on all of the DIP Collateral (as defined herein), including, without limitation, all property constituting "Cash Collateral," as defined in Section 363(a) of the Bankruptcy Code, which liens shall be subject to the priorities set forth herein;

(v)    authorizing the Debtor to pay the principal, interest, fees, expenses and other amounts payable under the DIP Documents as such amounts become due and payable, including, without limitation, continuing commitment fees, closing fees, servicing fees, facility fees, administrative agent's fees, the reasonable fees and disbursements of the DIP Administrative Agent's attorneys, advisors, accountants, and other consultants, all to the extent provided in and in accordance with the terms of this Interim Order, of the DIP Agreement and DIP Documents;

(vi)    authorizing the use of Cash Collateral of the Prepetition Administrative Agents and the Prepetition Lenders under the Prepetition Credit Documents (each as defined herein) and providing adequate protection to the Prepetition Administrative Agents and Prepetition Lenders for any Diminution in Value (as defined below) of their interests in the Prepetition Collateral (as defined below), including the Cash Collateral;

(vii)    providing for indefeasible repayment in full in cash of all obligations owed to the Prepetition Revolving Administrative Agent and Prepetition Revolving Lenders under the Prepetition Revolving Credit Documents (each as defined herein), subject to the reservation of rights provided in paragraph 29 below;

(viii)    vacating and modifying the automatic stay imposed by Section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents and this Interim Order, as limited pursuant hereto; and

(ix)    scheduling a final hearing (the "<u>Final Hearing</u>") to consider the relief requested in the DIP Motion and approving the form of notice with respect to the Final Hearing.

2

The Court having considered the DIP Motion, the Declaration of Edward J. Puisis, Chief Financial Officer of Dayton Superior Corporation, in Support of the Chapter 11 Petition and First Day Motions (the "Declaration"), the exhibits attached thereto, the DIP Documents and the evidence submitted at the interim hearing held on April 19, 2009 (the "Interim Hearing"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 4001 and 9014; and the Local Rules; and all objections, if any, to the interim relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that granting the interim relief requested is necessary to avoid immediate and irreparable harm to the Debtor and its estate pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtor and its estate; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING BY THE DEBTOR, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.      *Commencement of Case*.  On April 19, 2009 (the "Petition Date") the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court") commencing this Case.  The Debtor is continuing in the management and operation of its business and properties as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this Case and the United States Trustee (the "U.S. Trustee") has not yet appointed the official committee of unsecured creditors in this Case (the "Statutory Committee").

B.      *Jurisdiction and Venue*.  This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over these proceedings, and over the persons and property affected hereby.

3

Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, and 364 of the Bankruptcy Code and Rules 2002, 4001 and 9014 of the Bankruptcy Rules and Rules 2002-1(b), 4001-2, 9006-1 and 9013-1 of the Local Rules. Venue for the Case and proceedings on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

       C.    *Debtor's Stipulations.*  Without prejudice to the rights of parties in interest with standing as set forth in paragraph 29 herein, the Debtor admits, stipulates, acknowledges and agrees that (collectively, paragraphs C(i) through C(vii) hereof shall be referred to herein as the "Debtor's Stipulations"):

       (i)    *Prepetition Facility.*  Pursuant to that certain Prepetition Revolving Credit Agreement dated as of March 3, 2008 (as amended, supplemented, restated, or otherwise modified prior to the Petition Date, the "Prepetition Revolving Credit Agreement," and together with all related loan and security documents, the "Prepetition Revolving Credit Documents"), among the Borrower, as borrower, the other parties thereto that are designated as credit parties, the lenders party thereto (collectively, the "Prepetition Revolving Lenders"), GE Capital Markets, Inc., as sole lead arranger, General Electric Capital Corporation ("GE Capital") as administrative agent (the "Prepetition Revolving Administrative Agent") for itself as Lender and the other Prepetition Revolving Lenders, the Prepetition Revolving Lenders provided a revolving credit facility to or for the benefit of the Borrower (the "Prepetition Revolving Credit Facility"). In addition, pursuant to that certain Prepetition Term Loan Credit Agreement dated as of March 3, 2008 (as amended, supplemented, restated, or otherwise modified prior to the Petition Date, the "Prepetition Term Loan Agreement,"[2] and together with all related loan and security documents, the "Prepetition Term Loan Documents"), among the Borrower, as borrower, the other parties thereto that are designated as credit parties, the lenders party thereto (collectively, the "Prepetition Term Loan Lenders," and, together with the Prepetition Revolving Lenders, the "Prepetition Lenders"), GE Capital Markets, Inc., as sole lead arranger, Silverpoint Finance as administrative agent (the "Prepetition Term Loan Administrative Agent," and together with the Prepetition Revolving Administrative Agent, the "Prepetition Administrative Agents") for itself as Lender and the other Prepetition Term Loan Lenders, the Prepetition Term Loan Lenders provided a term loan facility to or for the benefit of the Borrower (the "Prepetition Term Loan Facility," and, together with the Prepetition Revolving Credit Facility, the "Prepetition Facilities").

---

[2]  The Prepetition Revolving Credit Agreement and the Prepetition Term Loan Agreement, together, shall be referred to herein as the "Prepetition Credit Agreements."

4

(ii)    *Prepetition Obligations.*    The Prepetition Revolving Credit Facility provided the Borrower with, among other things, up to $150,000,000 in aggregate principal amount of revolving commitments, including letter of credit and swingline loan commitments; provided that additional loans (which loans could not be reborrowed once paid) were permitted to be made to the Borrower in an aggregate amount equal to the amount of interest, fees and other costs permitted to be capitalized pursuant to the terms of the Prepetition Revolving Credit Agreement.    The Prepetition Term Loan Facility provided the Borrower with, among other things, up to $100,000,000 in aggregate principal amount of commitments; provided that additional loans (which loans could not be reborrowed once paid) were permitted to be made to the Borrower in an aggregate amount equal to the amount of interest, fees and other costs permitted to be capitalized pursuant to the terms of the Prepetition Term Loan Agreement.    As of the Petition Date, (x) the outstanding principal amount owed by the Borrower under the Prepetition Revolving Credit Facility was not less than $109,770,019.80, with the outstanding face amount of all letters of credit under the Prepetition Revolving Credit Agreement being not less than $8,924,107.50, and (y) the outstanding principal amount owed by the Borrower under the Prepetition Term Loan Facility was not less than $102,970,000 (collectively, together with any amounts incurred or accrued but unpaid prior to the Petition Date in accordance with the Prepetition Term Loan Credit Documents and Prepetition Revolving Credit Documents (collectively, the "Prepetition Credit Documents"), including but not limited to, accrued and unpaid interest, any reimbursement obligations (contingent or otherwise) in respect of letters of credit, any fees, expenses and disbursements (including, without limitation, attorneys' fees, financial advisors' fees, related expenses and disbursements), treasury, cash management and derivative obligations, indemnification obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Borrower's or any other Credit Parties' (as defined in the Prepetition Credit Documents) obligations pursuant to the Prepetition Credit Documents, including all "Obligations" as described in the Prepetition Credit Agreements, the "Prepetition Obligations").

(iii)    *Prepetition Collateral.*    To secure the Prepetition Obligations, the Borrowers granted to the Prepetition Administrative Agents and Prepetition Lenders security interests in and liens on (the "Prepetition Liens"), among other things, substantially all of the assets of the Debtor, including without limitation, all Collateral, as defined in the Prepetition Credit Agreements (collectively, the "Prepetition Collateral"); *provided, however,* that the Prepetition Collateral does not include any property that has been excluded from the definition of "Collateral" in the Prepetition Credit Documents.

(iv)    *The Prepetition Liens.*    The Prepetition Liens on the Prepetition Collateral were perfected as of the Petition Date.

(v)    *Validity of Prepetition Liens and Prepetition Obligations.*    Subject to the provisions of paragraph 29 herein, the Debtor and the Prepetition Administrative Agents acknowledge and agree that: (a) the Prepetition Liens are valid, binding, enforceable, non-avoidable and perfected; (b) the Prepetition Liens had priority over any and all other liens on the Prepetition Collateral, subject only to certain liens otherwise permitted by the Prepetition Credit Documents (to the extent any such permitted liens were valid, properly perfected, non-avoidable

5

and senior in priority to the Prepetition Liens as of the Petition Date or after the Petition Date pursuant to section 546(b) of the Bankruptcy Code, the "Permitted Senior Prior Liens");[3] (c) the Prepetition Obligations evidenced by the Prepetition Revolving Credit Documents (the "Prepetition Revolving Obligations") constitute legal, valid, binding, and non-avoidable obligations of the Debtor, enforceable in accordance with the terms of the Prepetition Revolving Credit Documents (other than in respect of the stay of enforcement arising from Section 362 of the Bankruptcy Code); (d) no offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens which secure the Prepetition Revolving Obligations (the "Prepetition Revolving Liens") or the Prepetition Revolving Obligations exist, and no portion of the Prepetition Revolving Liens or the Prepetition Revolving Obligations is subject to any challenge or defense, including, without limitation, avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtor and its estate have no offsets, defenses, claims, objections, challenges, causes of actions, and/or choses in action, including without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code, against the Prepetition Revolving Administrative Agent, the Prepetition Revolving Lenders, and/or any of their respective affiliates, parents, subsidiaries, agents, attorneys, advisors, professionals, officers, directors and employees arising out of, based upon or related to the Prepetition Revolving Credit Documents; (f) as of the Petition Date, the value of the Prepetition Collateral securing the Prepetition Revolving Obligations exceeded the amount of the Prepetition Revolving Obligations, and accordingly the Prepetition Revolving Obligations are allowed secured claims within the meaning of Section 506 of the Bankruptcy Code; (g) the Debtor has waived, discharged and released any right it may have to challenge any of the Prepetition Revolving Obligations and the Prepetition Revolving Liens, and to assert any offsets, defenses, claims, objections, challenges, causes of action and/or choses of action against the Prepetition Revolving Administrative Agent, Prepetition Revolving Lenders, and/or any of their respective affiliates, parents, subsidiaries, agents, attorneys, advisors, professionals, officers, directors and employees with respect to actions arising out of, based upon or related to the Prepetition Revolving Credit Documents; and (h) any payments made on account of the Prepetition Revolving Obligations to or for the benefit of the Prepetition Revolving Administrative Agent or the Prepetition Revolving Lenders prior to the Petition Date were proper and are not subject to disgorgement.

(vi)    *Cash Collateral.*  The Debtor represents that all of the Debtor's cash, including the cash in its deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitute the Cash Collateral of the Prepetition Administrative Agents and the Prepetition Lenders.

(vii)    *Default by the Debtor.*  The Debtor acknowledges and stipulates that the Debtor is in default of certain terms and provisions of the Prepetition Credit Documents as of the Petition Date.

---

[3] Nothing herein shall constitute a finding or ruling by this Court that any such Permitted Senior Prior Liens are valid, senior, perfected and non-avoidable.  Moreover, nothing shall prejudice the rights of any party in interest including, but not limited to, the Debtor, the DIP Administrative Agent, the DIP Lenders, the Prepetition Administrative Agents, the Prepetition Lenders and the Statutory Committee to challenge the validity, priority, perfection or extent of any such Permitted Senior Prior Lien and/or security interest.

D.    _Findings Regarding Postpetition Financing._

(i)    _Request for Postpetition Financing._  The Debtor seeks authority to (a) enter into the DIP Facility on the terms described herein and in the DIP Documents, and (b) use Cash Collateral on the terms described herein to administer its Case and fund its operations.  At the Final Hearing, the Debtor will seek final approval of the proposed postpetition financing arrangements and use of Cash Collateral arrangements pursuant to a proposed final order (the "Final Order"), which shall be in form and substance acceptable to the DIP Administrative Agent and Prepetition Revolving Administrative Agent (each in their sole discretion), and notice of which Final Hearing and Final Order will be provided in accordance with this Interim Order.

(ii)    _Priming of Liens._  The priming of the Prepetition Liens on Revolving Credit Priority Collateral (as defined in that certain Intercreditor Agreement dated as of March 3, 2008 by and among the Debtor and the Administrative Agents (the "Intercreditor Agreement")) and all other liens of the Prepetition Revolving Administrative Agent and the Prepetition Revolving Lenders on the Prepetition Collateral under Section 364(d) of the Bankruptcy Code, as contemplated by the DIP Facility and as further described below, will enable the Debtor to obtain the DIP Facility and to continue to operate its business to the benefit of the estate and creditors.  However, the Prepetition Administrative Agents and the Prepetition Lenders are entitled to receive adequate protection as set forth in this Interim Order pursuant to Sections 361, 363 and 364 of the Bankruptcy Code until such time as the Prepetition Obligations owed by the Borrower under the Prepetition Facilities are paid in full, for any diminution in the value of each of their respective interests in the Prepetition Collateral (including Cash Collateral) resulting from, among other things, the Debtor's use, sale or lease of such collateral, market value decline of such collateral, the imposition of the automatic stay, the priming (to the extent provided for

7

herein) of the Prepetition Liens on Revolving Credit Priority Collateral, and the subordination to the Carve Out (collectively, and solely to the extent of any such diminution in value, the "Diminution in Value").

   (iii)  *Need for Postpetition Financing and Use of Cash Collateral.*  The Debtor's need to use Cash Collateral on an interim basis and to obtain credit on an interim basis pursuant to the DIP Facility is immediate and critical to enable the Debtor to continue operations and to administer and preserve the value of its estate. The ability of the Debtor to finance its operations, maintain business relationships with its vendors, suppliers and customers, to pay its employees and otherwise finance its operations requires the availability of working capital from the DIP Facility and the use of Cash Collateral, the absence of any one of which would immediately and irreparably harm the Debtor, its estate and its creditors, and the possibility for a successful reorganization. The Debtor does not have sufficient available sources of working capital and financing to operate its business or maintain its properties in the ordinary course of business without the DIP Facility and authorized use of Cash Collateral.

   (iv)  *No Credit Available on More Favorable Terms.*  Given its current financial condition, financing arrangements, and capital structure, and the present state of the economy, and the limited availability of credit being provided by lenders in general, the Debtor is unable to obtain financing from sources other than the DIP Lenders on terms more favorable than provided for in the DIP Facility. The Debtor has been unable to obtain unsecured credit allowable under Bankruptcy Code Section 364(b)(1) as an administrative expense. The Debtor has also been unable to obtain sufficient credit: (a) having priority over that of administrative expenses of the kind specified in Sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) secured by a lien on property of the Debtor and its estate that is not otherwise subject to a lien; or

8

(c) secured solely by a junior lien on property of the Debtor and its estate that is subject to a lien. Financing on a postpetition basis is not otherwise available without granting the DIP Administrative Agent, for the benefit of itself and the DIP Lenders: (1) perfected security interests in and liens on (each as provided herein) all of the Debtor's existing and after-acquired assets with the priorities set forth in paragraph 6 hereof, (2) superpriority claims and liens, and (3) the other protections set forth in this Interim Order.

(v)    *Use of Proceeds of the DIP Facility.* As a condition to entry into the DIP Agreement, the extension of credit under the DIP Facility and the authorization to use Cash Collateral, the DIP Administrative Agent, the DIP Lenders, the Prepetition Revolving Administrative Agent and the Prepetition Revolving Lenders require, and the Debtor has agreed, that proceeds of the DIP Facility shall be used, in each case in a manner consistent with the terms and conditions of the DIP Documents and in accordance with an Approved Budget (as defined below), solely for (i) working capital and other general corporate purposes, (ii) permitted payment of costs of administration of the Case, (iii) payment of such prepetition expenses as consented to by the DIP Administrative Agent, in its sole discretion, and as approved by the Court, and (iv) in connection with the initial advance under the DIP Facility, the repayment in full in cash of all revolving loans, swing loans and all interest, fees expenses and other amounts (other than prepetition letters of credit ("Prepetition Letters of Credit")) outstanding under the Prepetition Revolving Credit Facility as of the date of the Interim Order (the "Prepetition Revolving Loan Debt"). The repayment in full in cash of the Prepetition Revolving Loan Debt on the date of the Interim Order is necessary as the Prepetition Revolving Administrative Agent and the Prepetition Revolving Lenders will not otherwise consent to providing the DIP Facility and providing credit to the Debtor hereunder, and the Prepetition Revolving Administrative

9

Agent and the Prepetition Revolving Lenders have not otherwise consented to the use of their Cash Collateral or the subordination of their liens to the DIP Liens (as defined herein). For the avoidance of doubt, the repayment in full in cash of the Prepetition Revolving Loan Debt is subject to the reservation of rights provisions contained in paragraph 29 below.

      E.    *Adequate Protection.*

      (i)    The Prepetition Revolving Administrative Agent, for the benefit of itself and the Prepetition Revolving Lenders, are each entitled to receive adequate protection to the extent of any Diminution in Value of their respective interests in the Prepetition Collateral (including Cash Collateral) until such time as the Prepetition Revolving Obligations owed by the Borrower under the Prepetition Revolving Credit Facility are paid in full. Pursuant to Sections 361, 363 and 507(b) and subject to the terms of this Interim Order, as adequate protection, the Prepetition Revolving Administrative Agent, for the benefit of itself and the Prepetition Revolving Lenders, will receive, until such time as the Prepetition Revolving Obligations owed by the Borrower under the Prepetition Revolving Credit Facility are paid in full, (a) adequate protection liens and claims, as more fully set forth in paragraph 11 herein, (b) the payment of the reasonable fees, costs and expenses, including, without limitation, legal and other professionals' fees and expenses, of the Prepetition Revolving Administrative Agent and Prepetition Revolving Lenders under the Prepetition Revolving Credit Documents; and (c) prior to the payment of the Prepetition Revolving Loan Debt, the payment of interest at the respective contractual rates (including the additional contractual default rates) set forth in the Prepetition Revolving Credit Agreement after an acceleration of the secured obligations thereunder.

      (ii)    The Prepetition Term Loan Administrative Agent, for the benefit of itself and the Prepetition Term Loan Lenders, are each entitled to receive adequate protection to the

RLF1-3388956-2

extent of any Diminution in Value of their respective interests in the Prepetition Collateral (including Cash Collateral) until such time as the Prepetition Term Loan Obligations owed by the Borrower under the Prepetition Term Loan Credit Facility are paid in full, subject to the Intercreditor Agreement.  Pursuant to Sections 361, 363 and 507(b) and subject to the terms of this Interim Order, as adequate protection, the Prepetition Term Loan Administrative Agent, for the benefit of itself and the Prepetition Term Loan Lenders, will receive, until such time as the Prepetition Obligations owed by the Borrower under the Prepetition Term Loan Facility are paid in full,  adequate protection liens and claims, as more fully set forth in paragraph 11 herein.

(iii)     Further, the payment of adequate protection pursuant to this Interim Order is subject to the rights of parties in interest with standing other than the Debtor to assert that the aforementioned payments should be allocated to a reduction of principal amounts owed pursuant to Section 506(b) of the Bankruptcy Code.

F.     *Sections 506(c) and 552(b)*.  In light of (i) the DIP Administrative Agent' and DIP Lenders' agreement to subordinate their liens and superpriority claims to the Carve Out, and (ii) the Prepetition Administrative Agents' and the Prepetition Lenders' agreement to subordinate their liens to the Carve Out and the DIP Liens, and upon the entry of a Final Order (a) the Prepetition Administrative Agents and Prepetition Lenders are entitled to a waiver of any "equities of the case" claims under Section 552(b) of the Bankruptcy Code, and (b) the DIP Administrative Agent, DIP Lenders, Prepetition Revolving Administrative Agent and the Prepetition Revolving Lenders will each be entitled to a waiver of the provisions of Section 506(c) of the Bankruptcy Code (which waiver shall be without prejudice to the contention of the DIP Administrative Agent and DIP Lenders that Section 506(c) of the Bankruptcy Code does not apply to secured claims incurred pursuant to Section 364 of the Bankruptcy Code).

11

G.    _Good Faith of the Agents and the Lenders._

(i)    _Willingness to Provide Financing._  The DIP Lenders have indicated a willingness to provide financing to the Debtor subject to: (a) the entry of this Interim Order and the Final Order; (b) approval of the terms and conditions of the DIP Facility and the DIP Documents including, and subject to, the repayment of the Prepetition Revolving Loan Debt; and (c) entry of findings by this Court that such financing is essential to the Debtor's estate, that the DIP Administrative Agent and DIP Lenders are extending credit to the Debtor pursuant to the DIP Documents in good faith, and that the DIP Administrative Agent's and DIP Lenders' claims, superpriority claims, security interests and liens and other protections granted pursuant to this Interim Order and the DIP Documents will have the protections provided in Section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of this Interim Order or any other order.

(ii)    _Business Judgment and Good Faith Pursuant to Section 364(e)._  The terms and conditions of the DIP Facility and the DIP Documents and the fees paid and to be paid thereunder are fair, reasonable, and the best available to the Debtor under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and consideration.  The DIP Facility and the use of Cash Collateral were negotiated in good faith and at arms' length among the Debtor, the DIP Administrative Agent, the DIP Lenders, the Prepetition Revolving Administrative Agent and the Prepetition Revolving Lenders.  Use of Cash Collateral and credit to be extended under the DIP Facility shall be deemed to have been so allowed, advanced, made, used or extended in good faith, and for valid business purposes and uses, within the meaning of Section 364(e) of the

12

Bankruptcy Code, and the DIP Administrative Agent and the DIP Lenders are therefore entitled to the protection and benefits of Section 364(e) of the Bankruptcy Code and this Interim Order.

H.    _Notice_.  Notice of the Interim Hearing and the emergency relief requested in the DIP Motion has been provided by the Debtor, whether by facsimile, email, overnight courier or hand delivery, to certain parties in interest, including: (i) the U.S. Trustee; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the parties included on the Debtor's list of twenty (20) largest unsecured creditors; (v) counsel to the Prepetition Administrative Agents for themselves and for the Prepetition Lenders; (vi) counsel to the DIP Administrative Agent for itself and the DIP Lenders; (vii) all other known parties with liens of record on assets of the Debtor as of the Petition Date; (viii) all financial institutions at which the Debtor maintains deposit accounts; (ix) the landlords for all non-residential real properties occupied by the Debtor as of the Petition Date; (x) Odyssey Investment Partners; and (xi) all other parties required to receive notice pursuant to Bankruptcy Rules 2002, 4001 or 9014 and Local Rules 2002-1(b), 4001-2 and 9013-1  or requesting to receive notice prior to the date hereof.  The Debtor has made reasonable efforts to afford the best notice possible under the circumstances and such notice is good and sufficient to permit the interim relief set forth in this Interim Order.

Based upon the foregoing findings and conclusions, the DIP Motion and the record before the Court with respect to the DIP Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1.    _Interim Financing Approved_.  The DIP Motion is granted to the extent provided herein, the Interim Financing (as defined herein) is authorized and approved, and the use of Cash

RLF1-3388956-2

Collateral on an interim basis is authorized, subject to the terms and conditions set forth in this Interim Order.

2.      Objections Overruled.    All objections to the interim relief sought in the DIP Motion to the extent not withdrawn or resolved are hereby overruled.

**DIP Facility Authorization**

3.      Authorization of the DIP Financing.    The Interim Financing is hereby approved. The Debtor is expressly and immediately authorized and empowered to execute and deliver the DIP Documents and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Interim Order and the DIP Documents, and to deliver all instruments and documents which may be required or necessary for the performance by the Debtor under the DIP Facility and the creation and perfection of the DIP Liens.    The Debtor is hereby authorized to pay, in accordance with this Interim Order, the principal, interest, fees, expenses, legal fees and other amounts described in the DIP Documents and all other documents comprising the DIP Facility as such become due and without need to obtain further Court approval, including, without limitation, closing fees, letter of credit fees (including issuance, fronting, and other related charges), unused facility fees, commitment fees, servicing fees, audit fees, facility fees, administrative agent's fees, the reasonable fees and disbursements of the DIP Administrative Agent's attorneys, advisors, financial advisors, accountants, and other consultants and DIP Lenders' attorneys, all to the extent provided in the DIP Documents.    Upon execution and delivery, the DIP Documents shall represent valid and binding obligations of the Debtor, enforceable against the Debtor and its estate in accordance with their terms.

4.      Authorization to Borrow.    Prior to entry of the Final Order, to prevent immediate and irreparable harm to the Debtor's estate, the Debtor is hereby authorized to request, obtain and use extensions of credit upon the entry of the Interim Order under the DIP Facility, in an

14

amount equal to the Prepetition Revolving Loan Debt, plus $35,000,000 (the "Interim Financing"), subject to the terms, conditions, limitations on availability and reserves set forth in the DIP Documents and the DIP Facility, as applicable, and this Interim Order.

5.    Postpetition Liens. To secure the DIP Obligations, effective immediately upon entry of this Interim Order, pursuant to Sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP Administrative Agent, for the benefit of itself and the DIP Lenders, are hereby granted continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in and liens on (collectively, the "DIP Liens") any and all of the existing and after-acquired real and person, tangible and intangible assets of the Debtor or its estate, including, without limitation, (a) 100% of the stock of its domestic subsidiaries and 65% of the stock of its foreign subsidiaries; (b) cash and cash equivalents; (c) bank accounts; (d) all accounts and other receivables; (e) contract rights; (f) instruments, documents and chattel paper; (g) securities (whether or not marketable); (h) equipment, inventory and fixtures; (i) real property interests; (j) franchise rights, (k) patents, tradenames, trademarks, copyrights and all other intellectual property, (l) general intangibles; (m) capital stock; (n) investment property; (o) supporting obligations; (p) letter of credit rights; (q) all commercial tort claims and all other  causes of action and claims, including but not limited to, upon entry of a Final Order approving such relief, any claim or cause of action under Chapter 5 of the Bankruptcy Code ("Avoidance Actions"); and (r) to the extent not covered in the foregoing, all other personal property of the Debtor, whether tangible or intangible, real or personal, and all proceeds and products of each of the foregoing and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, any and all proceeds of any insurance, indemnity, warranty or guaranty payable to the Borrower from

15

time to time with respect to any of the foregoing; and the proceeds thereof (collectively, the "DIP Collateral").

6.    <u>DIP Lien Priority</u>.    The DIP Liens are valid, automatically and properly perfected, non-avoidable, senior in priority and superior to any security, mortgage, collateral interest, lien or claim to any of the DIP Collateral, except that the DIP Liens shall be junior only to: (a) Permitted Senior Prior Liens; (b) Prepetition Liens of the Prepetition Term Loan Lenders on the Term Loan Priority Collateral (as defined in the Intercreditor Agreement); (c) to the extent required by the Intercreditor Agreement, the Prepetition Term Lenders' Adequate Protection Liens; and (d) the Carve Out.  Pursuant to Section 364(d) of the Bankruptcy Code, the DIP Liens shall be senior to the Prepetition Liens (other than the Prepetition Liens and, to the extent required by the Intercreditor Agreement, the Prepetition Term Lenders' Adequate Protection Liens, of the Prepetition Term Loan Lenders on the Term Loan Priority Collateral, the Prepetition Revolving Lenders' Adequate Protection Liens and the Prepetition Term Lenders' Adequate Protection Liens (each as defined herein) on all DIP Collateral).  Except as expressly set forth herein, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Case or any other subsequent proceedings under the Bankruptcy Code, including, without limitation, any Chapter 7 proceeding if the Case is converted to a case under Chapter 7 of the Bankruptcy Code (the "<u>Successor Case</u>"), and shall be valid and enforceable against any trustee appointed in the Case, upon the conversion of the Case to a case under Chapter 7 of the Bankruptcy Code, and/or upon the dismissal of the Case.  The DIP Liens shall not be subject to Sections 510, 549 (to the extent a successful action is brought against any DIP Lender), or 550 of the Bankruptcy Code.  No lien or interest avoided and

preserved for the benefit of the estate pursuant to Section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens.

7. <u>Superpriority Claims</u>.  Upon entry of this Interim Order, the DIP Administrative Agent and DIP Lenders are hereby granted, pursuant to Section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim in the Case (the "<u>DIP Superpriority Claim</u>") for all DIP Obligations: (a) except as set forth herein, with priority over any and all administrative expense claims and unsecured claims against the Debtor or its estate in the Case, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code Sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 507(a), 507(b) (except as set forth herein), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114, and any other provision of the Bankruptcy Code, as provided under Section 364(c)(1) of the Bankruptcy Code; and (b) which shall at all times be senior to the rights of the Debtor and its estate, and any successor trustee or other estate representative to the extent permitted by law.  Notwithstanding the foregoing, the DIP Superpriority Claim (i) shall be subject to the Carve Out and (ii) shall not be payable from or have recourse to the Avoidance Actions or proceeds thereof unless approved by the Final DIP Order.

8. <u>No Obligation to Extend Credit</u>.  The DIP Administrative Agent and DIP Lenders shall have no obligation to make any loan or advance, or to issue any letters of credit under the DIP Documents, unless all of the conditions precedent to the making of such extension of credit or the issuance of such letter of credit under the DIP Documents and this Interim Order have been satisfied in full or waived by the DIP Administrative Agent in its sole discretion.

9.    Use of Proceeds; Repayment of Prepetition Revolving Loan Debt. From and after the entry of the Interim Order, the Debtor shall use advances of credit under the DIP Facility only for the purposes specifically set forth in this Interim Order, the DIP Documents and in compliance with the Approved Budget. Immediately upon the entry of the Interim Order, the Debtor is authorized to draw on the DIP Facility to pay in full the Prepetition Revolving Loan Debt (including, without limitation, accrued and unpaid interest, fees, expenses, legal fees, disbursements and other amounts properly chargeable thereunder, other than Prepetition Letters of Credit) and any amounts owing under the Prepetition Revolving Credit Documents that are contingent and unliquidated and subsequently become liquidated. All Prepetition Letters of Credit outstanding under the Prepetition Revolving Credit Agreement shall be deemed to be reissued under the DIP Facility (the "Roll-Over DIP Letters of Credit") upon entry of the Interim Order. The repayment of the Prepetition Revolving Loan Debt provided for herein shall be subject to the reservation of rights of parties in interest set forth in paragraph 29 of this Interim Order, and upon expiration, without a challenge being brought, of the Challenge Period (as defined in paragraph 30 hereof) or the final resolution of a challenge brought in compliance with the provisions of this Interim Order and applicable law (where such challenge did not have the effect of successfully impairing any of the Prepetition Revolving Loan Debt), the Debtor's repayment of the Prepetition Revolving Loan Debt shall be deemed to be indefeasible, final and not subject to challenge or disgorgement.

**Authorization to Use Cash Collateral**

10.    Authorization to Use Cash Collateral. Subject to the terms and conditions of this Interim Order, the DIP Facility, the DIP Documents and in accordance with the Approved Budget, the Debtor is authorized to use Cash Collateral until the DIP Termination Date (as defined herein). Nothing in this Interim Order shall authorize the disposition of any assets of the

18

Debtor or its estate outside the ordinary course of business, or the Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Interim Order, the DIP Facility, the DIP Documents and in accordance with the Approved Budget.

       11.    <u>Adequate Protection Liens</u>.

       (a)    <u>Prepetition Revolving Lenders' Adequate Protection Liens</u>.  Pursuant to Sections 361, 363(e) and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Revolving Administrative Agent and Prepetition Revolving Lenders in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral on account of, among other things, the granting of the DIP Liens, the Debtor's use of Cash Collateral, the use, sale or lease of any other Prepetition Collateral, market value decline of collateral, the priming of the Prepetition Liens and the imposition of the automatic stay, the Debtor hereby grants to the Prepetition Revolving Administrative Agent, for the benefit of itself and the Prepetition Revolving Lenders, continuing valid, binding, enforceable and perfected postpetition security interests in and liens on the DIP Collateral (the "<u>Prepetition Revolving Lenders' Adequate Protection Liens</u>") to the extent of any Diminution in Value until such time as the Prepetition Obligations owed by the Borrower under the Prepetition Revolving Credit Facility are paid in full.

       (b)    <u>Prepetition Term Lenders' Adequate Protection Liens</u>.  Pursuant to Sections 361, 363(e) and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Term Loan Administrative Agent and Prepetition Term Loan Lenders in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral on account of, among other things, the granting of the DIP Liens, the Debtor's use of Cash Collateral, the use, sale or lease of any other Prepetition Collateral, market value decline of

collateral, the priming of the Prepetition Liens and the imposition of the automatic stay, the Debtor hereby grants to the Prepetition Term Loan Administrative Agent, for the benefit of itself and the Prepetition Term Loan Lenders, continuing valid, binding, enforceable and perfected postpetition security interests in and liens on the DIP Collateral (the "Prepetition Term Lenders' Adequate Protection Liens") to the extent of any Diminution in Value until such time as the Prepetition Obligations owed by the Borrower under the Prepetition Term Loan Facility are paid in full.

      (c)    <u>Priority of Adequate Protection Liens.</u>

      (i)    Until such time as the Prepetition Obligations owed by the Borrower under the Prepetition Facilities are paid in full, the Prepetition Revolving Lenders' Adequate Protection Liens and the Prepetition Term Lenders' Adequate Protection Liens shall be junior only to: (A) Permitted Senior Prior Liens; (B) the Carve Out; (C) to the extent permitted by the Intercreditor Agreement, the DIP Liens, (D) the Prepetition Liens of the Prepetition Term Loan Lenders on the Term Loan Priority Collateral; and (E) the Prepetition Liens of the Prepetition Revolving Lenders on the Revolving Credit Loan Priority Collateral. Except as provided herein, the Prepetition Revolving Lenders' Adequate Protection Liens and the Prepetition Term Lenders' Adequate Protection Lien shall be senior to all other security interests in, liens on, or claims against any of the DIP Collateral until such time as the Prepetition Obligations owed by the Borrower under the Prepetition Facilities are paid in full. The Prepetition Revolving Lenders' Adequate Protection Liens, granted to the Prepetition Revolving Lenders and Prepetition Revolving Administrative Agent pursuant to paragraph 11(a) of this Interim Order, in Revolving Credit Priority Collateral, shall be senior and prior to the Prepetition Term Lenders' Adequate Protection Liens granted in paragraph 11(b) of this Interim Order to the Prepetition

20

Term Lenders and Prepetition Term Loan Administrative Agent in the Revolving Credit Priority Collateral, to the extent and in the manner contemplated by the Intercreditor Agreement. The Prepetition Term Lenders' Adequate Protection Liens, granted in paragraph 11(b) of this Interim Order to the Prepetition Term Lenders and Prepetition Term Loan Administrative Agent, in Term Loan Priority Collateral, shall be senior and prior to the Prepetition Revolving Lenders' Adequate Protection Liens granted in paragraph 11(a) of this Interim Order to the Prepetition Revolving Lenders and Prepetition Revolving Administrative Agent in the Term Loan Priority Collateral to the extent and in the manner contemplated by the Intercreditor Agreement.

(ii)    Except as provided herein, the Prepetition Revolving Lenders' Adequate Protection Liens and the Prepetition Term Lenders' Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted or created in the Case, and shall be valid and enforceable against any trustee appointed in the Case, or upon the dismissal of the Case until such time as the Prepetition Obligations owed by the Borrower under the Prepetition Facilities are paid in full. The Prepetition Revolving Lenders' Adequate Protection Liens and the Prepetition Term Lenders' Adequate Protection Liens shall not be subject to Sections 549 or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to Section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Liens, the Prepetition Revolving Lenders' Adequate Protection Liens or the Prepetition Term Lenders' Adequate Protection Liens.

12.    Adequate Protection Payments and Protections.  As further adequate protection for the Prepetition Revolving Administrative Agent and the Prepetition Revolving Lenders, prior to payment of the Prepetition Revolving Loan Debt, the Debtor is authorized and directed to provide adequate protection in the form of: (i) the payment of reasonable fees and expenses of

21 or in the event that the repayment
of the Prepetition Revolving Loan
Debt is not approved in the Final Order

the Prepetition Revolving Administrative Agent and the Prepetition Revolving Lenders, (ii) ongoing payment of the reasonable fees, costs and expenses, including, without limitation, legal and other professionals' fees and expenses, whether incurred before or after the Petition Date, of the Prepetition Revolving Administrative Agent and the Prepetition Revolving Lenders, as required under the Prepetition Revolving Credit Documents, (iii) the payment of interest at the respective contractual rates (including the additional contractual default rates) set forth in the Prepetition Revolving Credit Agreement after an acceleration of the secured obligations thereunder; and (iv) continued maintenance and insurance of the Prepetition Collateral and the DIP Collateral in amounts and for the risks, and by the entities, as required under the Prepetition Revolving Credit Documents, the DIP Documents and this Interim Order.  The payment of adequate protection pursuant to this Interim Order is subject to the rights of parties in interest other than the Debtor to assert that the aforementioned payments should be allocated to a reduction of principal amounts owed pursuant to Section 506(b) of the Bankruptcy Code.

13.    <u>Section 507(b) Reservation</u>.    Nothing herein shall impair or modify the application of Section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Administrative Agents or the Prepetition Lenders hereunder is insufficient to compensate for any Diminution in Value of their respective interests in the Prepetition Collateral during the Case. Any such claims under Section 507(b) of the Bankruptcy Code shall be subject to the terms and conditions of the Intercreditor Agreement. Notwithstanding the foregoing, the adequate protection liens and claims granted in this Order shall not be payable from or have recourse to the Avoidance Actions or proceeds thereof unless approved by the Final Order.

RLF1-3388956-2

### Provisions Common to DIP Financing
### and Use of Cash Collateral Authorizations

14.    Amendments.    The Debtor is hereby authorized, without further notice, motion,

application to, order of, or hearing before, this Court, to enter into agreements with the DIP

Administrative Agent providing for any non-material modifications to DIP Documents or of any

other modifications to the DIP Documents necessary to conform the DIP Documents to this

Interim Order; *provided, however,* that notice of any ~~material~~ modification or amendment to the

DIP Documents shall be provided to counsel for any Statutory Committee, counsel to the U.S.

Trustee, counsel to the DIP Administrative Agent, counsel to the Prepetition Administrative

Agents, and any entity whose rights are affected by the modification, each of whom shall have

five (5) business days from the date of such notice within which to object in writing to such

modification or amendment. *to the extent that such modification or amendment is material*  If a Statutory Committee, the U.S. Trustee or an affected entity

timely objects to any material modification or amendment to the DIP Documents, then such

modification or amendment shall only be permitted pursuant to order of this Court. All material

modifications shall be filed with the Bankruptcy Court.

15.    Budget.

(a)    Generally.    Attached hereto as <u>Exhibit 1</u> is a 13-week budget (the "<u>Initial</u>

<u>Approved Budget</u>") which reflects the Debtor's anticipated cumulative cash receipts and

expenditures on a weekly basis and all necessary and required cumulative expenses which the

Debtor expects to incur during each week of the Initial Approved Budget. The Initial Approved

Budget may be modified or supplemented from time to time by additional budgets (covering any

time period covered by a prior budget or covering additional time periods) prepared by the

Debtor and approved in writing pursuant to the applicable terms of the DIP Agreement by the

DIP Administrative Agent (each such additional budget, a "<u>Supplemental Approved Budget</u>"), in

23

each case without further notice, motion or application to, order of, or hearing before, this Court; *provided, however*, that the Debtor shall file copies of each Supplemental Approved Budget with the Court within five (5) business days of its approval by the DIP Administrative Agent. The aggregate, without duplication, of all items in the Initial Approved Budget and any Supplemental Approved Budgets shall constitute an "Approved Budget."

      (b)    Budget Covenants. The Debtor acknowledges and agrees that pursuant to the terms of the DIP Documents it is required, among other things, (x) to provide to the DIP Administrative Agent, so as actually to be received by 5:00 p.m. (New York time) on Friday of each week, weekly variance reports for the preceding weekly period and on a cumulative basis from the Petition Date to the report date, comparing actual cash receipts and disbursements to amounts projected in the Approved Budget, in substantially the same form and detail as delivered pursuant to the Prepetition Revolving Credit Agreement; (y) by 5:00 p.m. (New York time) on Friday of each week from the Closing Date until the DIP Termination Date, to deliver to the DIP Administrative Agent an updated, "rolling" 13-week budget which sets forth by line item updated projected receipts and disbursements for the Debtor during the period commencing from the end of the previous week through and including thirteen weeks thereafter; *provided* that the Debtor shall still be subject to and be governed by the terms of the Approved Budget then in effect and the DIP Administrative Agent and DIP Lenders shall, as applicable, have no obligation to fund to such updated "rolling budget" or permit the use of Cash Collateral with respect thereto until the date on which such updated budget shall constitute an Approved Budget; and (z) by no later than five (5) business days prior to the end of the period covered by the then applicable Approved Budget, to deliver to the DIP Administrative Agent a Supplemental Approved Budget. The Debtor acknowledges and agrees that (i) the incurrence or payment by

24

the Debtor of expenses (x) other than the itemized amounts set forth in the Approved Budget and (y) in excess of the variances permitted by Section 5.2 of the DIP Agreement, or (ii) other violation of the terms and condition of this sub-paragraph (b), shall constitute an Event of Default under and as defined in the DIP Agreement.

16.    Modification of Automatic Stay.  Subject to paragraph 22 below, the automatic stay imposed under Section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms, rights, benefits, privileges, remedies and provisions of this Interim Order and the other DIP Documents in each case without further notice, motion or application to, order of, or hearing before this Court.

17.    Perfection of DIP Liens and Adequate Protection Liens.  This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted herein including the DIP Liens, the Prepetition Revolving Lenders' Adequate Protection Liens and the Prepetition Term Lenders' Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens, the Prepetition Revolving Lenders' Adequate Protection Liens, the Prepetition Term Lenders' Adequate Protection Liens, or to entitle the DIP Administrative Agent, the DIP Lenders, the Prepetition Administrative Agents or the Prepetition Lenders to the priorities granted herein.    Notwithstanding the foregoing, the DIP Administrative Agent and the Prepetition Administrative Agents each are authorized to file, as it in its sole discretion deems necessary, such financing statements, mortgages, notices of liens and other similar documents to

25

perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the DIP Liens, the Prepetition Revolving Lenders' Adequate Protection Liens and the Prepetition Term Lenders' Adequate Protection Liens, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; *provided, however,* that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens, the Prepetition Revolving Lenders' Adequate Protection Liens and/or the Prepetition Term Lenders' Adequate Protection Liens.  The Debtors are authorized and directed to execute and deliver promptly upon demand to the DIP Administrative Agent and the Prepetition Administrative Agents all such financing statements, mortgages, notices and other documents as the DIP Administrative Agent or the Prepetition Administrative Agents may reasonably request.  The DIP Administrative Agent and the Prepetition Administrative Agents, each in its discretion, may file a photocopy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notice of lien or similar instrument.

18.    Proceeds of Subsequent Financing.  If the Debtor, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed in the Case, shall obtain credit or incur debt pursuant to Bankruptcy Code Sections 364(b), 364(c) or 364(d) or in violation of the DIP Documents at any time prior to the indefeasible repayment in full in cash of all DIP Obligations and Prepetition Obligations, the cancellation, backing or cash collateralization of letters of credit pursuant to the terms of the DIP Documents, and the termination or the DIP Administrative Agent's and DIP Lenders' obligation to extend credit under the DIP Facility, and such facilities are secured by any DIP Collateral, then, unless otherwise agreed by the DIP Administrative Agent in writing in its sole discretion (i) all the cash

26

proceeds derived from such credit or debt shall immediately be turned over to the DIP Administrative Agent to be applied pursuant to section 2.12 of the DIP Agreement; and (ii) after payment in full of all obligations evidenced by the DIP Documents, all the cash proceeds derived from such credit or debt shall immediately be turned over to the Prepetition Administrative Agents to be applied pursuant to section 2.12 of the Prepetition Credit Agreements, in each case consistent with the Intercreditor Agreement.

19.    Maintenance of DIP Collateral.  Until the indefeasible payment in full in cash of all DIP Obligations and all Prepetition Obligations, the cancellation, backing, or cash collateralization of letters of credit pursuant to the terms of the DIP Documents, and the termination of the DIP Administrative Agent's and the DIP Lenders' obligation to extend credit under the DIP Facility, the Debtor shall: (a) insure the DIP Collateral as required under the DIP Facility and the Prepetition Facilities; and (b) maintain the cash management system in effect as of the Petition Date, as modified by any order that may be entered by the Court which has first been agreed to by the DIP Administrative Agent or as otherwise required by the DIP Documents.

20.    Disposition of DIP Collateral.  The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral other than in the ordinary course of business without the prior written consent of the DIP Administrative Agent and DIP Lenders (and no such consent shall be implied, from any other action, inaction or acquiescence by the DIP Administrative Agent or DIP Lenders, or from any order of this Court), except as otherwise provided for in the DIP Documents or otherwise ordered by the Court.

21.    DIP Termination Date.  On the DIP Termination Date (a) all DIP Obligations shall be immediately due and payable, and all commitments to extend credit under the DIP Facility will terminate, and all letters of credit outstanding shall be cash collateralized, backed or

27

cancelled pursuant to the terms of the DIP Documents; and (b) all authority to use Cash Collateral shall cease. For purposes of this Interim Order, the "<u>DIP Termination Date</u>" shall mean the Termination Date, as defined in the DIP Agreement.

      22.    <u>Rights and Remedies Upon Event of Default</u>. Subject to the terms of the DIP Documents, immediately upon the occurrence and during the continuation of an Event of Default (as defined in the DIP Documents), (i) the DIP Administrative Agent may, and at the request of the DIP Lenders shall, declare (1) all DIP Obligations owing under the DIP Documents to be immediately due and payable; (2) the termination, reduction or restriction of any commitment to extend credit to the Debtor to the extent any such commitment remains; and (3) the termination of the DIP Agreement and any other DIP Document as to any future liability or obligation of the DIP Administrative Agent and the DIP Lenders, but without affecting any of the DIP Liens or the DIP Obligations; (ii) the DIP Administrative Agent may revoke the Debtor's right, if any, under this Interim Order and/or the other DIP Documents to use Cash Collateral; (iii) the DIP Administrative Agent may invoke the right to charge interest at the default rate under the DIP Documents; and (iv) the DIP Administrative Agent may collect and apply proceeds of the DIP Collateral pursuant to section 2.12(c) of the DIP Agreement. The DIP Administrative Agent shall provide five (5) business days' prior notice (the "<u>Remedies Notice Period</u>") of its intent to exercise remedies (other than those set forth above in this paragraph) under this Interim Order and the DIP Documents to (i) the Debtor and its counsel; (ii) counsel to any Statutory Committee; (iii) counsel to the Prepetition Administrative Agents; and (iv) the U.S. Trustee. ~~The Debtor acknowledges and agrees, and this Court hereby orders that the only issue to be determined and decided at any Court hearing regarding such matters is whether an Event of Default has occurred and is continuing under the DIP Agreement or whether the DIP~~

~~Termination Date has occurred~~. Unless the Court determines during the Remedies Notice Period that an Event of Default has not occurred and/or is not continuing, the automatic stay, as to all of the DIP Lenders and the Prepetition Revolving Lenders shall automatically be terminated at the end of the Remedies Notice Period without further notice or order. Upon expiration of the Remedies Notice Period, the DIP Administrative Agent and the Prepetition Revolving Administrative Agent shall be permitted to exercise all rights and remedies set forth herein, in the DIP Agreement, the DIP Documents, the Prepetition Revolving Credit Agreement and the Prepetition Revolving Credit Documents, and as otherwise available at law without further order of or application or motion to the Court, and without restriction or restraint by any stay under Sections 362 or 105 of the Bankruptcy Code, or otherwise, except as provided in the Intercreditor Agreement.

23. <u>Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Interim Order</u>. The DIP Administrative Agent, DIP Lenders, Prepetition Revolving Administrative Agent and the Prepetition Revolving Lenders have acted in good faith in connection with this Interim Order and their reliance on this Interim Order is in good faith. Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with Section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, the DIP Administrative Agent, the DIP Lenders, the Prepetition Revolving Administrative Agent and the Prepetition Revolving Lenders are entitled to the protections provided in Section 364(e) of the Bankruptcy Code. Any such modification, amendment or vacatur shall not affect the validity and enforceability of any advances previously made or made hereunder, or lien, claim or priority authorized or created

29

hereby.  Any liens or claims granted to the DIP Administrative Agent, the DIP Lenders, the Prepetition Administrative Agents or the Prepetition Lenders hereunder arising prior to the effective date of any such modification, amendment or vacatur of this Interim Order shall be governed in all respects by the original provisions of this Interim Order, including entitlement to all rights, remedies, privileges and benefits granted herein.

        (a)    <u>DIP and Other Expenses</u>.  The Debtor is authorized to pay all reasonable out-of-pocket expenses of the DIP Administrative Agent and the DIP Lenders in connection with the DIP Facility, as provided in the DIP Documents, whether or not the transactions contemplated hereby are consummated, including, without limitation, legal, accounting, collateral examination, monitoring and appraisal fees, financial advisory fees, fees and expenses of other consultants, and indemnification and reimbursement of fees and expenses.  Payment of all such fees and expenses shall not be subject to allowance by the Court.  Professionals for the DIP Administrative Agent, the DIP Lenders, the Prepetition Revolving Administrative Agent and the Prepetition Revolving Lenders shall not be required to comply with the U.S. Trustee fee guidelines, however any time that such professionals seek payment of fees and expenses from the Debtor, each professional shall provide copies of its fee and expense statements to the U.S. Trustee and counsel for the Statutory Committee contemporaneously with the delivery of such fee and expense statements to the Debtor.[4]  The U.S. Trustee or any Statutory Committee may object to the reasonableness of the fees, costs and expenses included in any professional fee invoice submitted hereunder; *provided* that, any such objection shall be forever waived and barred unless (i) it is filed with this Court and served on counsel for the party seeking reimbursement no later than ten (10) days after the objecting party's receipt of the applicable professional fee invoice; and (ii) it describes with particularity the items or categories of fees,

---

[4] Such invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine.

RLFI-3388956-2

costs and expenses that are the subject of the objection and provides the specific basis for the objection to each such item or category of fees, costs and expenses, *provided further*, *however*, that the Debtor shall promptly pay all amounts that are not the subject of any objection.  Any hearing on an objection to payment of any fees, costs and expenses of the DIP Administrative Agent, any DIP Lenders, the Prepetition Revolving Administrative Agent, and any Prepetition Revolving Lenders set forth in a professional fee invoice shall be limited to the reasonableness or necessity of the particular items of categories of the fees, costs and expenses which are the subject of such objection.

24.    <u>Indemnification</u>.    The Debtor shall indemnify and hold harmless the DIP Administrative Agent, the DIP Lenders, each issuer of Letters of Credit and their respective shareholders, directors, agents, officers, parent, subsidiaries and affiliates, successors and assigns, attorneys and professional advisors, in their respective capacities as such, from and against any and all damages, losses, settlement payments, obligations, liabilities, claims, actions or causes of action, whether groundless or otherwise, and reasonable costs and expenses (including, without limitation, reasonable attorneys fees) incurred, suffered, sustained or required to be paid by an indemnified party of every nature and character arising out of or related to the DIP Documents or the DIP Facility or the transactions contemplated thereby and by this Interim Order, whether such indemnified party is a party thereto, as provided in and pursuant to the terms of the DIP Documents and as further described therein and herein, except to the extent resulting from such indemnified party's gross negligence or willful misconduct as finally determined by a final non-appealable order of a court of competent jurisdiction.  The indemnity includes indemnification for the DIP Administrative Agent's and any DIP Lender's exercise of discretionary rights granted under the DIP Facility.  In all such litigation, or the preparation ☐echaract, the DIP Administrative Agent and the DIP Lenders shall be entitled to select their

31

own counsel and, in addition to the foregoing indemnity, the Debtor agrees to promptly pay the reasonable fees and expenses of such counsel.

25.    <u>Proofs of Claim</u>.  The DIP Administrative Agent, the DIP Lenders, the Prepetition Revolving Administrative Agent and the Prepetition Revolving Lenders will not be required to file proofs of claim in the Case for any claim allowed herein.  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in the Case to the contrary, the Prepetition Revolving Administrative Agent on behalf of itself and the Prepetition Revolving Lenders are hereby authorized and entitled, in their sole discretion, but not required, to file (and amend and/or supplement, as they see fit) a proof of claim and/or aggregate proofs of claim in the Case for any claim allowed herein.  Any proof of claim filed by the Prepetition Revolving Administrative Agent shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by any of the Prepetition Revolving Lender.  Any order entered by the Court in relation to the establishment of a bar date in the Case shall not apply to the DIP Administrative Agent, the DIP Lenders, the Prepetition Revolving Administrative Agent or the Prepetition Revolving Lenders.

26.    <u>Carve Out; Payment of Case Professionals</u>.

(a)    <u>Carve Out</u>.  As used in this Interim Order, the "<u>Carve Out</u>" means (i) statutory fees payable to the U.S. Trustee and Clerk of the Bankruptcy Court pursuant to 28 U.S.C. § 1930(a)(6); and (ii) after the occurrence of an Event of Default under the DIP Documents and on and after the date that written notice thereof is delivered by the DIP Administrative Agent to counsel to the Debtor declaring that the Carve Out Trigger Date has occurred (the "<u>Carve Out Trigger Date</u>"), the following fees and expenses, but only to the extent that there are not sufficient, unencumbered funds in the Debtor's estate to pay such amounts at

32

the time payment is permitted to be made:  an amount (the "Case Professionals Carve Out") equal to the sum of (a) the finally allowed and unpaid professional fees and disbursements for any Case Professional (as defined below) incurred after the Carve Out Trigger Date in an aggregate amount not in excess of $1,000,000 for all Case Professionals, plus (b) all unpaid professional fees and disbursements of such Case Professionals incurred prior to the Carve Out Trigger Date  in each case to the extent such fees and expenses are ultimately allowed on a final basis by this Court under Sections 328, 330, or 331 of the Bankruptcy Code and any interim compensation procedures order, but solely to the extent that the same constitute Budgeted Professional Fees.  "Budgeted Professional Fees" shall mean those fees and expenses incurred by Case Professionals in accordance with the professional fee schedule which is incorporated as part of the Approved Budget.  "Case Professionals" shall mean any professional (other than an ordinary course professional) retained by the Debtor and any Statutory Committee pursuant to a final order of the Court (which order has not been vacated or stayed, unless the stay has been vacated) under Sections 327, 328, 363 or 1103(a) of the Bankruptcy Code.  To the extent that any payment to a Case Professional is subsequently disallowed and/or disgorged, the proceeds of any claim against the Case Professional for amounts so disallowed or disgorged shall constitute DIP Collateral and as such, shall be subject to the liens and claims granted hereunder.

(b)    No Direct Obligation to Pay Professional Fee and Disbursements.  None of the DIP Administrative Agent, the DIP Lenders, the Prepetition Administrative Agents or the Prepetition Lenders shall be responsible for the direct payment or reimbursement of any fees or disbursements of any Case Professionals incurred in connection with the Case under any chapter of the Bankruptcy Code.

33

(c)     Payment of Allowed Professional Fees Prior to the Carve Out Trigger Date. Prior to the Carve Out Trigger Date, the Debtor shall be permitted to pay Budgeted Professional Fees as the same may be due and payable, and such payments shall not reduce or be deemed to reduce the Carve Out.

(d)     Payment of Carve Out After the Carve Out Trigger Date.  Any indefeasible payment or reimbursement made on or after the Carve Out Trigger Date in respect of any professional fees and disbursements to a Case Professional shall permanently reduce the Case Professionals Carve Out on a dollar-for-dollar basis.  Any funding of the Carve Out by the DIP Lenders shall be added to and made a part of the DIP Obligations and secured by the DIP Collateral and otherwise entitled to the protections granted under this Interim Order, the DIP Documents, the Bankruptcy Code and applicable law.

27.     Limitations on the DIP Facility, the DIP Collateral, the Cash Collateral and the Case Professionals Carve Out.

(a)     The DIP Facility, the DIP Collateral, the Cash Collateral and the Case Professionals Carve Out may not be used in connection with:  (i) preventing, hindering, or delaying any of the DIP Administrative Agent's, the DIP Lenders', the Prepetition Administrative Agents' or the Prepetition Lenders' enforcement or realization upon any of the DIP Collateral once an Event of Default (as defined in the DIP Documents) has occurred (other than with respect to rights otherwise granted herein with respect to the Remedies Notice Period); (ii) using or seeking to use Cash Collateral or, except to the extent permitted by the terms of the DIP Documents, selling or otherwise disposing of DIP Collateral, in each case without the consent of the DIP Administrative Agent and the DIP Lenders; (iii) except to the extent permitted by the terms of the DIP Documents, using or seeking to use any insurance proceeds

34

constituting DIP Collateral without the consent of the DIP Administrative Agent and the DIP Lenders; or (iv) except to the extent permitted by the terms of the DIP Documents, incurring Indebtedness (as defined in the DIP Agreement) without the prior consent of the DIP Administrative Agent and the DIP Lenders.

(b)   The DIP Facility, the DIP Collateral, the Cash Collateral and the Case Professionals Carve Out may not be used in connection with: (i) objecting, challenging, litigating, opposing, marshaling or seeking to subordinate or □echaracterized in any way any claims, liens, DIP Collateral (including Cash Collateral), or Prepetition Collateral held by or on behalf of any of the DIP Administrative Agent, the DIP Lenders, the Prepetition Administrative Agents or the Prepetition Lenders; (ii) asserting, commencing or prosecuting any claims or causes of action, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code, against any of the DIP Administrative Agent, the DIP Lenders, the Prepetition Administrative Agents or the Prepetition Lenders, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees, in each case with respect to this Order, the DIP Documents or Prepetition Credit Documents or the transactions contemplated therein or thereby; or (iii) prosecuting an objection to, or contesting or opposing in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, character or enforceability of any of the DIP Obligations, the DIP Liens, the Prepetition Obligations or the Prepetition Liens, or any other rights or interests of any of the DIP Administrative Agent, the DIP Lenders, the Prepetition Administrative Agents or the Prepetition Lenders; *provided, however*, that the Case Professionals Carve Out and such collateral proceeds and loans under the DIP Documents may be used for allowed fees and expenses, in an amount not to exceed $50,000 in the aggregate, incurred solely by a Statutory Committee, if appointed, in investigating (but not

35

objecting to, challenging, litigating, opposing, or seeking to subordinate or ☐echaracterized) the validity, enforceability, perfection, priority, character or extent of the Prepetition Liens during the Challenge Period (as defined herein).

(c)     The Carve-Out shall be applied 50% to the Revolving Credit Priority Collateral and 50% to the Term Loan Priority Collateral (whether such collateral existed before or after the Petition Date)  (Such allocation shall be referred to as the "Carve Out Allocation").  Notwithstanding anything in this Order to the contrary, the liens and claims (whether super-priority, for adequate protection, prepetition or otherwise) of, granted to, or held by, any of the DIP Administrative Agent, the DIP Lenders, the Prepetition Administrative Agents or the Prepetition Lenders with respect to the Debtor shall be subject to the payment of the Carve Out, subject only to the Carve Out Allocation.

28.     Payment of Compensation.  Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of any Case Professionals or shall affect the right of the DIP Administrative Agent, the DIP Lenders, the Prepetition Administrative Agents or the Prepetition Lenders to object to the allowance and payment of such fees and expenses.

29.     Reservation of Certain Third Party Rights and Bar of Challenges and Claims.

(a)     Nothing in this Interim Order or the DIP Documents shall prejudice the rights of a Statutory Committee and any other party in interest with requisite standing other than the Debtor, to seek to object to or to challenge the findings, the Debtor's Stipulations, or any other stipulations herein, including, but not limited to those in relation to: (a) the validity, extent, priority, characterization or perfection of the mortgage, security interests, and liens of the Prepetition Revolving Administrative Agent with respect to the Prepetition Revolving Collateral; or (b) the validity, allowability, priority, characterization, fully-secured status or amount of the

36

Prepetition Obligations evidenced by the Prepetition Revolving Credit Documents.  A party, including the Statutory Committee, if appointed, must commence an adversary proceeding or contested matter, as required by the applicable Bankruptcy Rules, to challenge, including, without limitation, any claim against the Prepetition Revolving Administrative Agent or the Prepetition Revolving Lenders in the nature of a setoff, counterclaim or defense to the Prepetition Obligations evidenced by the Prepetition Revolving Credit Documents, or must file a motion seeking standing to pursue such challenge within ~~sixty~~ seventy-five (~~60~~ 75) calendar days from the Petition Date, except in respect of a Statutory Committee, said challenge must be made within sixty (60) calendar days from the date of the first appointment of the Statutory Committee by the U.S. Trustee (the "Challenge Period").

(b)      The Challenge Period may only be extended with the written consent of the Prepetition Revolving Administrative Agent and the Prepetition Revolving Lenders or by order of the Court.

(c)      Except to the extent asserted in an adversary proceeding or contested matter, as required by the applicable Bankruptcy Rules, filed during the Challenge Period, upon the expiration of such applicable Challenge Period, to the extent not otherwise waived or barred: (A) any and all such challenges by any party (including, without limitation, any Statutory Committee, any Chapter 11 trustee, and/or any examiner appointed in the Case, and any Chapter 7 trustee and/or examiner appointed in the Case), shall be deemed to be forever waived and barred; (B) all of the Debtor's Stipulations, waivers, releases, affirmations and other stipulations as to the priority, extent, and validity of the Prepetition Revolving Administrative Agent's and Prepetition Revolving Lenders' claims, liens, and interests, of any nature, under the Prepetition Revolving Credit Documents, or otherwise incorporated or set forth in this Interim Order, shall

be of full force and effect and forever binding upon the Debtor, the Debtor's bankruptcy estate and all creditors, interest holders, and other parties in interest in the Case; and (C) without further order of the Court, the Prepetition Revolving Obligations shall be allowed as fully secured claims within the meaning of Section 506 of the Bankruptcy Code. Upon a successful challenge brought pursuant to this paragraph, the Court may fashion any appropriate remedy.

(d)     For purposes of paragraphs (a) through (c) above, any trustee appointed or elected in these cases shall, until expiration of the Challenge Period described above and thereafter for the duration of any litigation commenced during the Challenge Period by the filing of a complaint described in subparagraphs (a) through (c) (whether commenced by such trustee or commenced by any other party in interest on behalf of the debtors' estates), be deemed to be a party "other than the Debtor" and shall not, for purposes of such litigation, be bound by the acknowledgements, admissions and confirmations of the debtors in this Order.

30.     <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

31.     <u>Section 506(c) Claims</u>.  Upon entry of the Final Order, to the extent such relief is granted, no costs or expenses of administration which have been or may be incurred in the Case at any time shall be charged against the DIP Administrative Agent, DIP Lenders, Prepetition Revolving Administrative Agent, Prepetition Revolving Lenders or any of their respective claims, the interest of the DIP Administrative Agent, DIP Lenders, Prepetition Revolving Administrative Agent or Prepetition Revolving Lenders in the DIP Collateral or the Revolving Credit Priority Collateral pursuant to Sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent, as applicable, of the DIP Administrative Agent, DIP

38

Lenders, Prepetition Revolving Administrative Agent or the Revolving Prepetition Lenders, and no such consent shall be implied from any other action, inaction, or acquiescence by any such agents or lenders.

32.    <u>No Marshaling/Applications of Proceeds</u>.    The DIP Administrative Agent, DIP Lenders, the Prepetition Revolving Administrative Agent and the Prepetition Revolving Lenders shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral, as the case may be.

33.    <u>Section 552(b)</u>.    The Prepetition Administrative Agents and the Prepetition Lenders shall each be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under Section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Administrative Agents and the Prepetition Lenders with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral upon entry of the Final Order, to the extent such relief is granted.

34.    <u>Discharge Waiver</u>.    The DIP Obligations and the Prepetition Obligations evidenced by the Prepetition Revolving Credit Documents shall not be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of Section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash on or before the effective date of a confirmed plan of reorganization. The Debtor shall not propose or support any plan of reorganization or sale of all or substantially all of the Debtor's assets or entry of any confirmation order or sale order that is not conditioned upon the indefeasible payment in full in cash, on or prior to the earlier to occur of the effective date of such plan of reorganization or sale and the DIP Termination Date, of all DIP Obligations and Prepetition Obligations evidenced by the Prepetition Revolving Credit Documents and the

39

cancellation, backing, or cash collateralization of all outstanding letters of credit pursuant to the terms of the DIP Documents unless the DIP Administrative Agent and Prepetition Revolving Administrative Agent have otherwise consented in writing to such plan or sale.

35.     <u>Rights Preserved</u>. Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the DIP Administrative Agent's, DIP Lenders', Prepetition Revolving Administrative Agent's or the Prepetition Revolving Lenders' right to seek any other or supplemental relief in respect of the Debtor; (b) any of the rights of any of the DIP Administrative Agent, DIP Lenders, Prepetition Revolving Administrative Agent and the Prepetition Revolving Lenders under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request a modification of the automatic stay of Section 362 of the Bankruptcy Code; (ii) request dismissal of the Case, conversion of the Case to a case under Chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers; or (iii) propose, subject to the provisions of Section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans; or (c) any other rights, claims or privileges (whether legal, equitable or otherwise) of any of the DIP Administrative Agent, DIP Lenders, Prepetition Revolving Administrative Agent or the Prepetition Revolving Lenders; *provided, however,* that the exercise of the foregoing rights in subparagraphs (a), (b) and (c) shall be subject to the Intercreditor Agreement. Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtor's, the Statutory Committee's or any party in interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence except as expressly set forth in this Interim Order.

40

36.     No Waiver by Failure to Seek Relief.  The failure of the DIP Administrative
Agent, DIP Lenders, Prepetition Revolving Administrative Agent or the Prepetition Revolving
Lenders to seek relief or otherwise exercise their rights and remedies under this Interim Order,
the DIP Documents, the Prepetition Revolving Credit Documents or applicable law, as the case
may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of
the DIP Administrative Agent, DIP Lenders, Prepetition Revolving Administrative Agent and
the Prepetition Revolving Lenders.

37.     Binding Effect of Interim Order.  Immediately upon execution by this Court, the
terms and provisions of this Interim Order shall become valid and binding upon and inure to the
benefit of the Debtor, the DIP Administrative Agent, the DIP Lenders, the Prepetition Revolving
Administrative Agent, the Prepetition Revolving Lenders, all other creditors of the Debtor, any
Statutory Committee or any other committee, appointed in the Case, and all other parties in
interest and their respective successors and assigns, including any trustee or other fiduciary
hereafter appointed in the Case or upon dismissal of the Case.

38.     No Modification of Interim Order.  Until and unless the DIP Obligations and the
Prepetition Obligations evidenced by the Prepetition Revolving Credit Documents have been
indefeasibly paid in full in cash, and all letters of credit under the DIP Facility shall have been
cancelled, backed, or cash collateralized in accordance with the terms of the DIP Documents
(such payment being without prejudice to any terms or provisions contained in the DIP Facility
which survive such discharge by their terms), and all commitments to extend credit under the
DIP Facility have been terminated, the Debtor irrevocably waives the right to seek and shall not
seek or consent to, directly or indirectly: (a) without the prior written consent of the DIP
Administrative Agent and the Prepetition Revolving Administrative Agent, (i) any modification,

41

stay, vacatur or amendment to this Interim Order; or (ii) a priority claim for any administrative expense or unsecured claim against the Debtor (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in Sections 503(b), 506(c), 507(a) or 507(b) of the Bankruptcy Code) in the Case, equal or superior to the DIP Superpriority Claim, other than the Carve Out; (b) without the prior written consent of the DIP Administrative Agent and the Prepetition Revolving Administrative Agent, any order allowing use of Cash Collateral resulting from DIP Collateral or Prepetition Collateral; (c) without the prior written consent of the DIP Administrative Agent and the Prepetition Revolving Administrative Agent, any lien on any of the DIP Collateral with priority equal or superior to the  DIP Liens, except as specifically provided in the DIP Documents; or (d) without the prior written consent of the Prepetition Revolving Administrative Agent, any lien on any of the DIP Collateral with priority equal or superior to the Prepetition Liens, Prepetition Revolving Lenders' Adequate Protection Liens, or the Prepetition Term Lenders' Adequate Protection Liens.   The Debtor irrevocably waives any right to seek any amendment, modification or extension of this Interim Order without the prior written consent, as provided in the foregoing, of the DIP Administrative Agent and the Prepetition Revolving Administrative Agent and no such consent shall be implied by any other action, inaction or acquiescence or the DIP Administrative Agent or Prepetition Revolving Administrative Agent.

39.    <u>Continuing Effect of Intercreditor Agreement</u>.    The Debtor, the DIP Administrative Agent, DIP Lenders, the Prepetition Administrative Agents and the Prepetition Lenders each shall be bound by, and in all respects of the DIP Facility shall be governed by, and be subject to all the terms, provisions and restrictions of the Intercreditor Agreement, except as may be expressly modified by this Interim Order.

42

*/Subject to entry of a Final Order,*

40.     Landlord Agreements; Access.  /All landlord agreements to which the Prepetition Administrative Agents are a party shall be deemed amended to include the DIP Administrative Agent as beneficiaries thereunder, and such agreements shall thereafter be additionally enforceable by the DIP Administrative Agent against, and binding upon, each landlord party thereto.  Subject to entry of a Final Order, any title, landlord's lien, right of distraint or levy, security interest or other interest that any landlord or mortgagee may have in any DIP Collateral or Prepetition Collateral of the Debtor located on such leased premises, to the extent the same is not void under section 545 of the Bankruptcy Code, is hereby expressly subordinated to the liens of the DIP Lenders and the Prepetition Lenders.

41.     Setoff and Recoupment.  Notwithstanding anything to the contrary contained herein, but subject to the terms of the Intercreditor Agreement, nothing in this Interim Order shall limit or impair the nature, extent, validity and/or priority of rights, if any, of any party in interest in the Case under Bankruptcy Code sections 546(c), 545 and 553 and/or the equitable doctrine of recoupment.

42.     Limits on Lender Liability.  Nothing in this Interim Order or in any of the DIP Documents, the Prepetition Revolving Credit Documents or any other documents related to this transaction shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Administrative Agent, the DIP Lenders, the Prepetition Revolving Administrative Agent or the Prepetition Revolving Lenders of any liability for any claims arising from any and all activities by the Debtor in the operation of its business in connection with the Debtor's post-petition restructuring efforts.

RLF1-3388956-2

43.    Interim Order Controls.  In the event of any inconsistency between the terms and conditions of the DIP Documents, the Intercreditor Agreement and this Interim Order, the provisions of this Interim Order shall govern and control.

44.    Survival.  The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in the Case; (b) converting the Case to a case under Chapter 7 of the Bankruptcy Code; (c) to the extent permitted by applicable law, dismissing the Case; or (d) pursuant to which this Court abstains from hearing the Case. The terms and provisions of this Interim Order, including the claims, liens, security interests and other protections granted to the DIP Administrative Agent, DIP Lenders, the Prepetition Administrative Agents or the Prepetition Lenders granted pursuant to this Interim Order and/or the DIP Documents, notwithstanding the entry of any such order, shall continue in the Case or, to the extent permitted by applicable law following dismissal of the Case, and shall maintain their priority as provided by this Interim Order until: (i) in respect of the DIP Facility, all the DIP Obligations, pursuant to the DIP Documents and this Interim Order, have been indefeasibly paid in full in cash and all letters of credit under the DIP Facility shall have been cancelled or cash collateralized in accordance with the terms of the DIP Documents (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms), and all commitments to extend credit under the DIP Facility are terminated, (ii) in respect of the Prepetition Revolving Credit Facility, all of the Adequate Protection Obligations owed to the Prepetition Revolving  Administrative Agent and Prepetition Revolving Lenders provided for in this Interim Order, have been indefeasibly paid in full in cash, and (iii) in respect of the Prepetition Term Loan Facility, all of the Adequate Protection Obligations owed to the

44

Prepetition Term Loan Administrative Agent and Prepetition Term Loan Lenders provided for in this Interim Order, have been indefeasibly paid in full in cash. The terms and provisions concerning the indemnification of the DIP Administrative Agent and the DIP Lenders shall continue in the Case, following dismissal of the Case, following termination of the DIP Documents and/or the indefeasible repayment in full in cash of the DIP Obligations.

45.    Final Hearing. The Final Hearing to consider entry of the Final Order and final approval of the DIP Facility is scheduled for May 11th _____ ____, 2009 at 1 p.m. before the Honorable Brendan L. Shannon, United States Bankruptcy Judge, on the 6th Floor, Courtroom 1, at the United States Bankruptcy Court for the District of Delaware. On or before April 23, 2009, the Debtor shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "Final Hearing Notice"), together with copies of this Interim Order and the DIP Motion, on: (a) the parties having been given notice of the Interim Hearing; (b) any party which has filed prior to such date a request for notices with this Court; (c) counsel for the Statutory Committee, if appointed by such date; (d) the Securities and Exchange Commission; and (e) the Internal Revenue Service. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court no later than on May 5th, 2009 at 4:00 p.m. (Eastern Daylight Time), which objections shall be served so as to be received on or before such date by: (i) counsel to the Debtor, Paul N. Heath, Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 and Keith A. Simon, Latham & Watkins LLP, 885 Third Avenue, New York, NY 10022-4834; (ii) counsel to the Statutory Committee; (iii) counsel to the DIP Administrative Agent, the DIP Lenders, the Prepetition Revolving Administrative Agent and Prepetition

45

Revolving Lenders, attn: Sarah Robinson Borders, King & Spalding LLP, 1180 Peachtree Street, Atlanta, GA 30309, and attn: Stephen M. Miller, Morris James LLP, 500 Delaware Avenue, Ste. 1500, Wilmington, DE 19801-1494; and (iv); the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, attn: Mark Kenney, Esq.

46.     _Nunc Pro Tunc_ Effect of this Interim Order.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable _nunc pro tunc_ to the Petition Date immediately upon execution thereof.

47.     Retention of Jurisdiction.  The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

48.     Other.  In the event that the DIP Obligations are indefeasibly paid in full in cash pursuant to the terms of a confirmed plan of reorganization or from the proceeds of a sale under section 363 of the Bankruptcy Code that includes Unencumbered Term Loan Assets (as defined by the Intercreditor Agreement), the proceeds of Unencumbered Term Loan Assets shall be deemed applied to the DIP Obligations prior to the proceeds of other DIP Collateral.

SO ORDERED by the Court this 21st day of _April_, 2009.

THE HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE

RLF1-3388956-2